The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Welcome to the United States Court of Appeals for the Fourth Circuit. And I want to welcome our dear colleague, Judge Nicole Berner, who is appearing remotely here this morning. Judge Berner, can you hear us okay? Yes, I can hear you. Thank you, Chief. We have three cases on the calendar this morning. First up, 22-1879, Southern Appalachian Coal Company v. Hendricks. For the Petitioner, Mr. Gregoracci. I hope I said that right. If I didn't, I apologize. You're up, whenever you're ready. Thank you. May it please the Court, Mark Gregoracci appearing for Petitioner, Southern Appalachian Coal Company. This Federal Black Loan Appeal presents serious prejudicial errors requiring reversal of the decision below. Number one, the ALJ erred in weighing the evidence in violation of this Court's decision in American Energy and improperly shifted the burden of proof to the employer. Number two, the ALJ erroneously applied the 15-year presumption to the employer's experts. Number three, the ALJ failed to consider reliable and probative evidence, that being Dr. Rosenberg's supplemental 2020 report. Had these legal errors not occurred, the ALJ's decision likely would have been different. This, Your Honors, is quintessential prejudicial error. As to the medical issues, we have two overarching questions. Is the claimant's chronic bronchitis significant? Is the claimant's restrictive impairment on pulmonary function testing related to coal mine dust exposure? The answer to both of those questions, Your Honors, is no. As a result, substantial evidence does not support the award of benefits. For these reasons, the award of benefits must be reversed and Federal Black Loan benefits must be denied. If I might, let me turn first to the argument relating to this Court's decision in American Energy LLC, the Director Office of Workers' Compensation Programs. This Court's decision in American Energy requires reversal of the decision below. The ALJ committed serious prejudicial error in evaluating the medical opinion evidence. In fact, Your Honors, the ALJ's analysis of the medical evidence in this case is just like the prejudicial error that occurred in American Energy. First, the ALJ provided no scrutiny to respondents' experts. As to Dr. Raj, who the respondent relies on, the ALJ believed this opinion was reasoned merely because Dr. Raj said there was no evidence of smoking-related lung disease. Therefore, there must be legal pneumoconiosis. Isn't your complaint that the ALJ didn't just credit your witnesses? No, Your Honor. My complaint is that the ALJ automatically discredited my witnesses because they would not rule out the possibility of there being a contribution from coal mine dust exposure. And that improperly imposed a burden on my experts, Dr. Ranavia and Dr. Rosenberg. Let me ask you about that, because in these cases, typically the petitioner goes first and presents his expert evidence. And there were three experts who testified in support of benefits and a finding that coal mining activity had something to do with a substantial cause of the petitioner's legal pneumoconiosis. So assuming that the ALJ was correct in crediting that evidence, I mean, doesn't that at that point put the burden on your client and your experts to explain why coal mining activity wasn't the cause or substantial cause of the petitioner's impairment? And isn't that essentially a burden to rule out that as a cause? Chief Judge Diaz, I appreciate that question. I'm glad you used the phrase rule out. That's for a 15-year presumption case. This is not a 15-year presumption case. This gentleman had 8 to 10 years of coal mine employment. The burden of proof always rests. Right, always. But once the petitioner meets that burden by presenting his experts, aren't we in the same heartland as a presumption? I mean, he's met his burden. It's now incumbent upon you to persuade the ALJ why the experts were wrong. And it seems logical that in order to do that, the experts have to explain why the coal miner's activities, time spent in the mines, wasn't a substantial cause of his legal pneumoconiosis. Yes, and two points to this, Your Honor. Our experts did explain why this gentleman didn't have legal pneumoconiosis. Going back to Judge Wilkinson's question, apparently the ALJ disagreed and discredited that evidence. The ALJ disagreed and discredited that evidence because our experts would not exclude or wouldn't meet a false burden of proof. That is to exclude coal mine dust exposure or to explain away a possibility. That is what this court held in American Energy. Similar circumstances. The ALJ, it's a serious prejudicial error for the ALJ to impose that burden on the employer's experts. And that is what occurred. This case is a little bit different than American Energy in the sense that there, the only basis for the ALJ's rejection of the experts was their inability or refusal to rule out, you know, mining activity as the basis for legal pneumoconiosis. But here the ALJ, in addition to, I concede, saying that the experts wouldn't rule it out, he also just didn't find them persuasive for other reasons. So why isn't that, in the context of this case, this rule out analysis harmless? Because of the other reasons that the ALJ gave for discrediting your witnesses. Because the ALJ in this case indeed found our experts, the employer's experts, credible. Says, here it is from the, this is Joint Appendix 356 of ALJ's reasoning. While I find Dr. Rosenberg's opinion that rib deformities could cause a reduction of ventilatory measurements, he did not persuasively explain skeletal deformities that could cause legal pneumoconiosis, how it could cause legal pneumoconiosis. So in that, in that sentence, your honors, and in that assessment, the ALJ says, Dr. Rosenberg, your explanation, guess what, is credible. However, I'm not going to accept it unless you explain away this possibility that this gentleman has legal pneumoconiosis. That's the problem. Once they were, once Dr. Rosenberg provided a credible explanation, that should have resulted in his opinion being given weight and then further evaluated. But the ALJ goes on and says, well, he didn't explain how he could exclude coal mine dust, coal dust as a contributing factor. Then we're back in to the problem of American energy. That is what permeated the analysis of the ALJ. And if I might point out what the ALJ said as to Dr. Ranavia. As to Dr. Ranavia, the ALJ said, well, wait a minute, Dr. Ranavia's view is at odds with the premises underlying the regulations, that is the preamble, because smoking and coal mine dust exposure, they can both contribute. You dispute that? I don't dispute that, but that is not a valid basis to discredit, automatically discredit Dr. Ranavia. That is what this court held in American Energy. But if the principal reason for the ALJ granting benefits is that you've got two causes, both substantially contributing to legal pneumoconiosis, but neither one being able to be precisely quantified, that can't be a basis for denying benefits, right? American Energy says it is, Your Honor. The claimant cannot prove legal pneumoconiosis and disability causation by, quote, by solely relying on evidence equally indicative of coal dust-induced lung disease and smoking-induced lung disease. Is that consistent with the preamble? That is indeed, according to this court, consistent with the preamble. Well, no, no, I'm asking, the court may have said that, but is it consistent with the preamble in your view? And what is it in the preamble that suggests that, and you've got two causes equally contributing to legal pneumoconiosis, one indicative of benefits, one not, that at that point the ALJ is supposed to throw up his hands and say, eh, I'm not going to grant benefits? This court's long line of precedent would say the claimant, the miner, has failed to prove their case. They have to prove by preponderance of the evidence, more likely than not. That the coal mining activity is 51% at fault or at cause? Is that the requirement? Your Honor, no, not a specific percentage, but as we understand the burden of proof being on the miner, preponderance of the evidence has to be more likely than not. If what we're saying is, could be smoking, could be coal dust exposure, who knows? That is called a tie. That means the burden has failed. I agree with that, but that's not what the ALJ found here. He said there were two causes, but he couldn't quantify how much each was responsible. But that's not the same as saying you've got two causes, I can't tell which one is a substantial cause. I think the ALJ found there were both substantial causes, and therefore the miner is entitled to benefits. Well, Your Honor, as to the ALJ's assessment, in fact it was, we don't know. As to Dr. Nader, the ALJ says, well, Dr. Nader's view that you can't distinguish the contribution of tobacco smoke and coal mine dust exposure. Don't know what it is, therefore it's got to be legal pneumoconiosis. As to Dr. Raj Bahandari, similar analysis. The ALJ is saying, well, you've got a known risk factor, smoking, a known risk factor, coal dust exposure. Dr. Raj Bahandari's view that smoking and coal mine dust exposure... Congress wanted to... I mean, Congress passed this program for a reason. And the reason was that working below ground is a altogether different experience from those of us who live most of our lives above ground. And isn't it consistent with what Congress wanted to say that this below ground occupation was a substantial contributing cause? It seems to me you're sort of suggesting that it has to be a 100% cause in order to be cognizable, and that would completely negate what Congress was trying to do, wouldn't it? That would, if that were my argument, Your Honor. It is not. Well, but what I understand you to say is that even though it's a significant cause or maybe a substantial contributing cause, that that's not enough. I think that's a doubtful proposition. My time is up. May I respond?  Okay, thank you. I'm not arguing he's got to prove it 100%. I'm not arguing he's got to prove 51%. I'm arguing that this gentleman always has... the miner always has the burden of proof. Where the evidence here is it could be smoking, it could be coal mine dust exposure. We can't separate the two, therefore it must be that coal mine dust exposure is a cause that is a faulty analysis, that is what American Energy, this Court's decision in American Energy said, can't tolerate it. It's shifted the burden of proof to the employer to explain away these possibilities. If I sit here and have to explain away every possibility, well, maybe it was possible. I'm not shifting the burden. Opinion of the ALJ has a good bit of language in it that says claimant has not established, or claimant has established, or whatever. I grant you that there's some uncertainty in the language there, but basically the ALJ talks about claimant, I find that claimant has established. Now, if he uses language like I find that claimant has established, wouldn't that indicate that he's not engaged in a burden-shifting scheme? Well, Your Honor, Judge Wilkinson, thank you for that question. It's in fact, indeed, a burden-shifting scheme. You say, I find the claimant has established legal pneumoconiosis. Why is that, Your Honor? Well, because smoking and coal mine dust exposure are contributory, therefore legal pneumoconiosis. And then it says, then the ALJ turns to the employer's and says, explain away the possible contribution of coal mine dust exposure. And we can't, because this ALJ would never accept any explanation, because there was a detailed, thorough explanation given by the employer's experts not even considered. In addition, the ALJ says, explain this to the employer's experts. I want you to explain away this contribution. I want you to explain away these factors. I want you to explain away these premises. But I will not consider Dr. Rosenberg's supplemental report, which is another fundamental error. So it is shifting the burden to the employer to explain away these premises. And then on top of that, I won't listen to the full explanation. This is, in this case, a serious prejudicial error. And my time is significantly run out. I just want to be sure that Judge Burner doesn't have any questions for you. Judge, do you have any? Yes, I have a question about the supplemental report. If the employer, the ALJ, did not consider that report, what if that report is not cumulative, the other evidence that was submitted? I understand that Dr. Rosenberg did not evaluate this measure a second time before drafting the supplemental report. And as I read the report, it summarizes the reports of the other physicians and some medical evidence, or medical research. I'd like you to tell us what's not cumulative in that supplemental report. Thank you, Your Honor. I appreciate that question. In Dr. Rosenberg's supplemental report, he considered additional evidence. In his initial report, he concluded that the minor wasn't totally disabled. And that was a concern of the ALJ. In the second report, Dr. Rosenberg reviewed the additional pulmonary function testing and said, you know what, there is a total disability by restrictive impairment on pulmonary function. That's completely different. Additionally, the ALJ contends that Dr. Rosenberg didn't explain how the rib deformities could cause the restrictive impairment. But in fact, Dr. Rosenberg goes through detail to explain that the decrease in ventilatory measurements, this is showing up as restrictive pulmonary impairment on pulmonary function tests, was due to increased weight gain over time. That the healed rib fractures and obesity produced the restrictive impairment, external pressure. That the claimant did not have a rapid loss of lung function within the first few years of coal mine dust exposure, which also undermined his claim. That the decline in FEV1, this pulmonary function testing, years after ceasing coal mine employment wasn't consistent with legal pneumoconiosis. That the gentleman had a recent onset of symptoms that didn't represent legal pneumoconiosis. And the claimant's presentation of these symptoms decades after coal mine employment ended was contrary to scientific principles that Dr. Rosenberg explained. None of this, what I just said, was considered by the ALJ. None of this is cumulative. The problem is the ALJ said, Dr. Rosenberg, you're credible, but guess what? You're never going to be credible because you have to explain away possibilities that are impossible to explain away. Judge Berner, do you have anything else? Thank you, counsel. Thank you. Mr. Austin. Thank you, Chief Judge Diaz. Good to see you again, Judge Wilkinson and Judge Berner. Can you be kind enough to speak up, please? Yes, Your Honor. Get the microphone as close as you can. Let me move it up a little. Judge Berner, can you hear me better? Perfect. Thank you. May it please the Court, Your Honors. I'll be honest. I was going to start with an analysis of the underlying facts of this case, but we've talked so much. I heard Mr. Gregoracci talk so much about the American Energy case that I think I may start with that unless the Court wants me to talk about the facts of this case first. I represented Mr. Good in that case, so I may refer to that case as the good case. But in the American Energy case, there's a clear distinguishing set of facts from the case we had before us. I received the order from the Court that stated that we needed to come today prepared to discuss that case and its applicability to the instant case. I think there's about 10 different things that are very different in the American Energy case from this case. First of all, this question before this Court doesn't have to do with chronic obstructive pulmonary disease. The majority of federal black lung cases that Your Honor see, and I know Your Honor see a lot of these, the typical case is a cigarette smoke-induced chronic obstructive pulmonary disease versus a coal mine dust-induced chronic obstructive pulmonary disease. This case has a restrictive type of impairment and chronic bronchitis. So the medical in this case is very different from the American Energy case. How is that relevant? Why does that make a difference? Well, it makes a difference because as Mr. Gregoracci was pointing out in the American Energy case, the claimant's experts stated it is due to both coal mine dust exposure and cigarette smoke and the judge only credited that opinion because it was consistent with the preamble. Whereas the flip side of that was the employer's doctor said the only cause of the impairment in this case is cigarette smoke-induced and he applied the exact opposite according to the preamble which said, the preamble says that cigarette smoking does not eliminate the possibility of an additive contribution from coal mine dust exposure. None of those things are at play in this case. In this case, we have a host of etiologies including coal mine dust exposure. You just heard Mr. Gregoracci talking about multiple other etiologies that his experts have cited as potentially contributing in this case including rib deformities, one doctor said asthma, both doctors said emphysema and then one doctor actually applied cigarette smoking whereas the other one did not. Dr. Ranavia had a conflated cigarette smoking history which was contrary to the ALJ's finding so that's another factual issue but I think that's important because we've got completely different medical considerations in this case from American Energy and that's just the first point. In this case, most critically the ALJ gave multiple reasons for both crediting claimants' experts and discrediting employers' experts and this court stated in the published opinion from good, I mean from American Energy, I'm always wanting to say good There was a situation in which five medical experts testified Yes. There were three testifying on behalf of your client Correct. And there were two testifying on behalf of the of the company. Correct. And the ALJ decided after listening to both that your experts were the most credible. Exactly. In terms of the causation question which seems to be central to this and it's the board affirmed it and the BRB affirmed and so I don't want to make something complicated that seems to me at heart relatively straightforward and what it seems to me is we're being asked essentially to just do the ALJ's job and to re-weigh the evidence but the problem is we don't have the experts before us the ALJ was the only one that saw the experts BRB didn't see them so and you're saying to us, why don't you credit the fact finder who actually saw the medical experts testify. Isn't that what it's, isn't that the straightforward view? Absolutely Judge Wilkinson I couldn't agree more with everything you just and I think it's more than the causation though, I think it goes even further than that The judge weighed conflicting opinions on disability and credited the claimants experts. The judge weighed opinions, conflicting opinions on legal pneumoconiosis and credited the claimants experts and the judge weighed conflicting medical opinions on legal pneumoconiosis causation, disability causation and credited the claimants experts but the real distinguishing factor this is critical, I believe when this court goes to look at the American Energy case which I think it will have to cite in its opinion the critical distinguishing factor in this case from American Energy is the fact that this fact finder provided more than just a reference to the preamble to either discredit the employers experts who did not also discuss coal mine dust exposure or to credit the claimants experts which considered both coal mine dust exposure and cigarette smoking and this court stated in American Energy that if the ALJ would have basically written in additional reasons for discrediting those experts it would have affirmed but when it looked at the ALJ's opinion in the American Energy case that was all that was there was just the reference to the preamble and this court really made a point to say that is not enough this case is very different because you've got an ALJ that cites multiple reasons for discrediting the employers experts and for crediting the claimants experts Do you think the ALJ was wrong to require, or maybe you don't agree with the premise, require the respondent in this case the experts to rule out mining activity as a cause of the legal pneumoconiosis Judge I'm like Judge Wilkinson I like to keep things kind of simple and I find it remarkable that we wouldn't ask an expert to consider whether black lung was present in a case when we're talking about a black lung case and I think this court said that in American Energy well the dissent said that these cases really boil down to what was the cause and in American Energy it was what was the cause was it coal mine dust exposure was it cigarette smoking in this case what was the cause was it coal mine dust exposure was it a rib abnormality I mean we're in a federal black lung claim so to suggest I'm sorry I was just going to say to suggest that the employers experts don't have to somehow even address the possibility that coal mine dust exposure could be playing a role in a federal black lung claim that doesn't make a lot of sense to me I think if an opinion is going to be reasoned and documented we hear this every day Mr. Grigorachi and I we depose experts every day and on both sides of these cases you'll hear physicians say the same thing we start out with a differential diagnosis we look at all the potential risk factors and then we go down the line and we start eliminating risk factors and so if you go into a federal black lung claim and you're not considering coal mine dust exposure especially significant and substantial coal mine dust exposure this gentleman had some pretty heavy dust and you're not addressing I'm sorry Judge we not infrequently get these cases where someone has spent a number of years in the mines not 15 as in your case but also has an unfortunate smoking addiction and sometimes it's even been a heavy smoking addiction of a pack a day or something but you know I just think upon my own experience whether it doesn't have to be a coal mine it could be a hospital or a company or whatever and you before going in the door you see people smoking around the company the company says you can smoke but you should go outside and it doing coal mining it can be monotonous work it can be tough labor all the rest and whereas you know I think smoking is a terrible habit folks sometimes fall into these kinds of addictions from just as a means to relax or to sort of take the edge off of what could be a pretty grueling day and so I ask myself well does this unfortunate habit negate Congress' desire to compensate those whose lungs are substantially compromised by coal mining work even though there may be another contributing cause and Congress used the words in part and so I don't the basic point that's always put before us is no this is a smoking problem and it may be that in part can't be good for the lungs but I'm thinking that that Congress had before it the conditions under which these folks were working and I just don't believe that a coal miner who smoked should be denied the benefits of this program. That's sort of my take on these on some of these cases now the company can can overcome that but here you had three experts and I looked at them and they seemed to know what they were doing or at least they put forward testimony that an ALJ could plausibly credit but as I say we get these cases with a smoking habit quite regularly and I'm just not prepared to push in the direction of saying that smoking is a matter of law disqualifies a miner from receiving these benefits and ALJ heard this he took all this into account and I don't know why we should do his job it's a simple way to look at it I guess it may be too simple but that's where I come from Judge Wilson I agree with you I think this court does not do the ALJ's job like I said I thought a big thing for me today was to discuss this American Energy case because that case is very different than what I'm typically seeing here in the 4th Circuit and I think the American Energy case really went out of its way to say the judges have to do a little bit more than what this particular judge did in this particular case and so I just want to make sure that I've made that point to your honors that in this particular case this particular ALJ did more than what that ALJ did in American Energy and I agree with you 100% if this court can ascertain what the ALJ did why the ALJ did it and if a reasonable mind could have reached that same conclusion then that is an affirmable decision and I think here you've certainly got that Judge Wilkinson and I agree with that Let me turn you back to American Energy to there's a sentence in here that I think goes to the heart of what the court was saying there the majority anyway says that if the only evidence a minor presents could equally relate to smoking or coal dust exposure he hasn't shown that his lung disease is more likely than not from coal dust Do you agree with that statement? I think that in each case for a physician to be credited the physicians got to offer language that complies with what the regulation requires to make that diagnosis. It shows that the mining activity was at least a substantial cause of significant or aggravating factor and in this case what you've got is you've got an ALJ who literally outlines each expert opinion separately under a separate heading it's well organized he considered each of the doctor's reports individually he quoted the doctor's reports and he gave certain weight to some and not so much weight to others and you've got physicians on claimant's side specifically opining I believe even though I can't rule out the possibility that cigarette smoke is also contributing I believe that coal mine dust exposure is a significant and substantial and aggravating factor of the total disability that meets the definition of exactly what an expert needs to show in order to make that diagnosis At the end of your friend's argument in response to Judge Berner's question he rattled off a number of things that Judge Rosenberg's supplemental report would have offered had the ALJ been considered it. It's clear that he didn't don't know why but do you disagree? I mean it seems like at least listening to him it sounded like there was a lot there but maybe you can tell us why there really isn't I see him on my side of the time so I'll answer this one Judge, you know in all respect to Mr. Gregoracci I have a lot of respect for him I think a lot of those reasons were contained in that first report now the one thing that I did hear him say which I think is true is that the expert actually did change his opinion regarding disability but if anything that really kind of helps my case not his so to simply review additional evidence and reach the exact same conclusion based on the exact same analysis I think the board got it right when it said that was harmless error I mean you've already got the ALJ explaining fully and this court can already tell that when Dr. Rosenberg offered the opinion he did the ALJ didn't find it persuasive so to re-offer that same in a supplemental report that may be longer and may have considered more evidence but engaged in the exact same analysis and reached the exact same conclusion we can reasonably infer what the ALJ would have done in that case and also I think the board made a statement in there that the employer did not argue before the board exactly what prejudice was caused by not considering that supplemental opinion so I think it has an obligation to do that but I'll have to check my brief on that Before we sit down I'll ask Judge Berner if she has any questions of you Thank you In terms of the supplemental report were there other supplemental reports that were submitted by other physicians or was Dr. Rosenberg the only physician to submit a supplemental report Judge as is the case in a lot of these federal black loan cases you've got a lot of supplemental reports. Everyone kind of wants that last word. I believe early on in the case I believe there was a supplemental like what they call a pilot program report that was submitted by the Department of Labor physician I believe, I hope that's right Do you think the ALJ considered an original doctor as opposed to a supplemental report that Dr. Rosenberg's original report was already not credited Do I think the opinion would be different if a sixth, like a brand new doctor were to have come in Yes, would you have a different view on the credit issue and whether the errors are or were not if what we were talking about was a thing considering a whole new report That's an interesting question I think there's just so I know that's a hypothetical but I would need a lot more information from that fact to say that what I will say though is when you have the exact same doctor offering the exact same analysis and the exact same conclusion, I think it's pretty easy to infer that that is a harmless error, but if you had an all new doctor who's coming in with an all new set of analyses I mean I think that could be different in that hypothetical, your honor but in this case I don't think that's the case because as the board found you've got nothing new with that supplemental report so it was harmless I hope that I apologize if that didn't answer your question but I can't that's a tough hypothetical, your honor Thank you, Mr. Austin Thank you, your honors Mr. Aracha, you've got some rebuttal Yes, thank you, your honors Okay, to answer Judge Barner's question that she just asked about the can't we get a new expert, another one, a sixth one the employer couldn't, we were limited we had two, two examiners, Rosenberg and Ranavia, we couldn't get another one and then we ask is this harmless error the ALJ again says Dr. Rosenberg, you need to explain this away explain away these possibilities explain away all this stuff that you look at this record, the ALJ would have never accepted any explanation but here's the explanation from Dr. Rosenberg I'm providing it, it's additional here it is, consider it and the ALJ says, no, I don't need to listen to it and then the benefits review board contends that well it's harmless error because well the ALJ was never going to accept Dr. Rosenberg and that's the problem that is the problem our experts, Dr. Rosenberg Dr. Ranavia were automatically discredited because they would not accept they would not give simply because they said that coal mine dust exposure did not cause this gentleman's restrictive pulmonary impairment, that is why they were excluded, if we look at again the ALJ here says that Dr. Rosenberg, I find credible your opinion that rib deformities could cause the reduced ventilatory measurements that's it, Dr. Rosenberg is credible, why is he excluded or why is he discredited automatically, he can't explain how you exclude coal dust as a contributing factor that put the burden on the employer to explain away a possibility this ALJ would never accept I think it would if that were the only evidence in the case but when you've got a number of petitioners experts saying that coal mining activity is a substantial cause of the impairment it seems logical that the defendants experts would have to explain why that's not true very good question, and the employers experts did, however the ALJ said you know what, you didn't rule out coal dust exposure you didn't consider this possibility which in fact they did, they talked about the causes and the contributing factors of the impairment, the ALJ automatically discredited by putting the burden on the employer to explain away possibilities that the ALJ would never accept, that's what American Energy I think what the chief is saying and it's something with which I wholeheartedly agree and that is that the ebb and flow of the adversary process doesn't necessarily mean that there's been some reversible error in terms of shifting the burden of proof that if one side puts forward something the adversary process would appear to suggest that the other side would want to counter it and you get that ebb and flow in a trial all the time or in an evidentiary hearing all the time but that kind of response and that kind of proper response doesn't always amount to some sort of reversible error in terms of the shifting of proof, I mean that's where I'm just a little unpersuaded about what you're trying to tell me. Your honor this case is more than just a battle of the experts. The burden clearly was shifted to the employer to explain away premises. American Energy says that is fundamental fatal legal error to require the employer's experts in a case such as this to explain away those premises. Once that happens that is fundamental serious prejudicial error and if I might I want to briefly touch upon the medical issues. So we've got two conditions. We've got chronic bronchitis, we've got restrictive pulmonary impairment as measured by pulmonary function testing. The relevant inquiry is whether this gentleman has legal pneumoconiosis. So it's whether that restrictive impairment is due to coal mine dust exposure. Four things in this record demonstrate he doesn't have legal pneumoconiosis. Number one, that chronic bronchitis doesn't cause any pulmonary impairment. Number two, that chronic bronchitis is not a factor in the restrictive impairment. Number three, the restrictive impairment is the sole basis for disability and number four, restrictive impairment is not related to coal mine dust exposure. Now how do we know chronic bronchitis had no effect? Dr. Nader, who my friend on the other side relies on, he said chronic bronchitis is a collection of nonspecific symptoms that have no effect on the claimant's pulmonary function and if it did manifest, it would manifest as obstructive impairment. This gentleman has purely restrictive impairment by definition. The chronic bronchitis doesn't cause any impact. And if I run out of time, but Dr. Nader, we asked him what is the cause of restrictive impairment and this is what he said and this is what I'll leave you with. I don't know. We should win. The case is in our favor. The evidence is in our favor. The legal errors are bound. Thank you. Thank you for your argument. I want to thank both counsel for the able arguments this morning. We appreciate your being here and helping us with these often difficult cases. We'll come down and greet counsel and then proceed on to our second well, Judge Burner is not going anywhere, but. Counsel, I'll ask you all to come up and just say hi to me if you don't mind. Alexandria, just a second.
judges: Albert Diaz, J. Harvie Wilkinson III, Nicole G. Berner